a

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| PATRICIA A ROBINSON,<br>Plaintiff | CIVIL DOCKET NO. 1:22-CV-06136 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| CITY OF PINEVILLE ET AL,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Officer Elizabeth Cameron ("Cameron"), Officer Codiak Thompson (Thompson), and the City of Pineville. ECF No. 6. Because Defendants are only entitled to partial relief, the Motion (ECF No. 6) should be GRANTED IN PART AND DENIED IN PART.

## I. Background

Robinson was in an automobile accident on December 9, 2021. She called 911, and Cameron responded to the call. ECF No. 1 at 3, 4. After speaking to Robinson and the other driver, Cameron advised Robinson that she was being cited for improper lane usage. ECF No. 1 at 4. Robinson refused to sign the citation because she did not believe she was at fault for the accident. *Id.*

Robinson called the Pineville Police Department to request another officer because she disagreed with Cameron's decision to issue a citation. *Id.* Shortly after making the call, Thompson arrived on the scene and "began yelling at Robinson to

1

put her hands behind her back." *Id.* Cameron also began yelling that Robinson was "under arrest." *Id.*

Robinson allegedly "put her hands up" and Thompson "put a handcuff on her left wrist." Cameron then began to "forcefully twist Plaintiff Robinson's right arm in an attempt to place Plaintiff Robinson's arm behind her back." *Id.* Robinson alleges that she "screamed and told the officers that she could not put her arms behind her back due to joint pain from arthritis." *Id.*

Thompson then Mirandized Robinson and told her again to place her hands behind her back. *Id.* Robinson allegedly told the officers "that she was unable to put her hands behind her back because of her physical condition." *Id.*

Robinson alleges that Cameron and Thompson "slammed" her on the ground; that "Thompson put his knees on Plaintiff Robinson's back applying pressure while Defendant Cameron pressed Plaintiff Robinson's head on the ground trying to force Plaintiff Robinson's arms behind her back." *Id.* Robinson asserts that she "told the officers that they were hurting her and to please stop." *Id.* Robinson "screamed for her disabled son who was the front seat passenger in her vehicle to help her." *Id.* Thompson instructed Plaintiff Robinson's son to get back in the vehicle. *Id.*

Robinson was 67 years old at the time of the incident. She allegedly suffers from atrial fibrillation, end stage arthritis in both knees, obesity, and "various other ailments." Robinson alleges that she uses a cane and walker to move around. *Id.* at 5.

Robinson alleges that she began to have severe shortness of breath while on the ground. She told Cameron and Thompson that she "could not breath and to please let her get up." *Id.* Thompson allegedly continued to yell at Robinson with his knees in her back, telling her that he would use the taser if she did not stop resisting. *Id.* "Thompson immediately tased Plaintiff Robinson." *Id.* Robinson alleges that she screamed to stop, but Thompson "continued to press his knees into her back" with "Cameron still forcing Plaintiff Robinson's arms behind her back." *Id.* While Robinson was "struggling to breathe," Thompson allegedly threatened to—and did—tase her again. *Id.* Robinson screamed at passing cars for help and asked the officers not to shoot her. *Id.* She agreed to sign the citation if they would let her up. *Id.*

Robinson alleges that, "[a]fter forcefully twisting and pulling" her arms "causing her significant pain," Cameron and Thompson put Robinson in handcuffs and picked her up from the ground. *Id.*

A third Pineville officer arrived on the scene and recognized Robinson as a schoolteacher. The third officer "removed the handcuffs" and allowed Robinson to be handcuffed with her arms in front of her rather than behind. Robinson states that she advised this officer that her hands and knees were in pain. *Id.* at 6.

Robinson was transported to the Pineville Police Department for booking. She was booked and released. *Id.* at 6. Robinson's husband brought her to the hospital for "bilateral knee pain, left wrist pain, and back pain" and "pain to the posterior neck, left shoulder, and midline back." *Id.* She also had puncture marks from the taser. *Id.*

3

Robinson filed a Complaint presenting three claims: (1) a § 1983 claim for excessive force in violation of the Fourth and Fourteenth Amendments against Defendants Cameron and Thompson in their individual and official capacities; (2) a § 1983 claim against the City of Pineville; and (3) relief under Louisiana law against all Defendants. ECF No. 1 at 6-11.

Defendants filed a Motion to Dismiss (ECF No. 6) asking that: (1) all claims against the Officers in their official capacities be dismissed as duplicative; (2) all federal claims be dismissed because Robinson admits she refused to sign the citation. Alternatively, the officers raise the defense of qualified immunity because the officers were authorized "to make a custodial arrest under the circumstances." ECF No. 6.

## II.    Law and Analysis

### A.    Legal standard under Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss all or part of a complaint for "failure to state a claim upon which relief can be granted." A complaint should not be dismissed "if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal citation and quotation omitted).

A complaint or claim is "facially plausible" when the facts alleged "allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (internal citation and quotation omitted). Factual allegations need not be detailed but must "raise a right

to relief above the speculative level." *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 496 (5th Cir. 2020).

In deciding a motion to dismiss, a court must "accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff." *Id.* at 496. However, a court need not accept as true "'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Arnold*, 979 F.3d at 266 (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (internal citation and quotation omitted)).

**B.    Legal standard under 42 U.S.C. § 1983**

"To state a claim under § 1983, a plaintiff must allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). Municipalities are "persons" within the meaning of § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law. *Lugar v. Edmondson Oil Co., Inc.*, 475 U.S. 922, 937 (1982).

To bring a viable § 1983 excessive force claim under the Fourth Amendment, a plaintiff must allege that (1) she was seized; (2) she suffered an injury; (3) the injury resulted "directly and only from the use of force that was excessive to the need"; and (4) the force used was objectively unreasonable. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989). As to the first factor, neither party disputes that Robinson was "seized." And Robinson

alleges that she suffered an injury.  However, Defendants assert that the actions of Officers Cameron and Thompson were objectively reasonable uses of force. Alternatively, Defendants argue that Officers Cameron and Thompson are entitled to qualified immunity as to Robinson's § 1983 individual capacity claims.

C.    <u>Robinson's claims against the officers in their official capacities should be dismissed as duplicative.</u>

Defendants move to dismiss the official capacity claims against Cameron and Thompson as duplicative of those against the City of Pineville.  ECF No. 6-2 at 3.  "A claim against government officials in their official capacity is a *de facto* suit against the local government entity of which the officials act as agents."  *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 751 (5th Cir. 2023) (citing *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999); *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358 (1991)).  An official-capacity suit "is *not* a suit against the official personally, for the real party in interest is the entity."  *Id.* (emphasis in original).

Robinson's official capacity claims against the officers are duplicative of those asserted against the municipality. *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (affirming the district court's dismissal of the allegations against all municipal officers and two employees of the Corps of Engineers in their official capacities as duplicative of those asserted against the municipality).

Because the City of Pineville is named as a defendant in this suit, there is no justification for maintaining the official capacity claims against the officers. *Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020) (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (official capacity claims properly dismissed where

6

"allegations duplicate claims against the respective governmental entities themselves.")); *Hext v. City of DeQuincy*, 2:21-CV-03093, 2022 WL 838938, at *3 (W.D. La. 2022). Therefore, the claims against Cameron and Thompson in their official capacities should be dismissed with prejudice.

### D. <u>Defendants are not entitled to the dismissal of all federal and state claims.</u>

Defendants' Motion seeks the dismissal of "all federal claims" because Robinson admits she refused to sign the citation; the officers were compelled to take her into custody; and the officers were entitled to use force to compel Robinson's compliance with the arrest. ECF No. 6 at 1, §§ II, III, IV. They seek dismissal of the state law claims "for the same reason." ECF No. 6 at 2, § V. The Motion to Dismiss does not address Robinson's excessive force claim.

In the Memorandum in Support of the Motion to Dismiss, Defendants argue they had an "obligation to take Robinson into custody." ECF No. 6-2 at 4. However, Robinson does not allege that Defendants had no right to take her into custody. Robinson admits that she did not sign the citation or place her hands behind her back as ordered. But she asserts that the level of force employed by Officers Cameron and Thompson was unconstitutionally excessive. The Memorandum in Support does not address Robinson's excessive force claim.

Finally, in the reply memorandum, Defendants argue that Robinson's "claims of excessive force related to her being placed on the ground while her hands were secured likewise fail to state a claim for relief." ECF No. 10. However, the Complaint

7

is misread again, as Robinson does not allege that she was "placed" on the ground. Rather, she alleges that she was "slammed" to the ground.  ECF No. 1 at 4.

The Fourth Amendment guarantees to individuals the right to be free from unreasonable search and seizure, including the right to be free from excessive force by law enforcement. *See Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996); *Graham v. O'Connor*, 490 U.S. 386, 395 (1989) ("the 'reasonableness' of a particular seizure depends not on *when* it is made, but also on *how* it is carried out") (emphasis in original).  The United States Court of Appeals for the Fifth Circuit routinely recognizes that such Fourth Amendment constitutional violations may lay the foundation for a § 1983 claim. *See Ikerd*, 101 F.3d at 433-34.

The Fourth Amendment is violated when an individual "suffers an injury that results directly and only from the officer's clearly excessive and objectively unreasonable use of force." *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) (quoting *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020)).

"The reasonableness inquiry in an excessive force case is an objective one: the question is whether the [officer's] actions are 'objectively unreasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (quoting *Scott v. United States*, 436 U.S. 128, 137-39 (1978)).  Factors guiding the analysis include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*  The Court also considers "the relationship between the need for force and

the amount of force used." *Id.* (quoting *Joseph*, 981 F.3d at 332).  These factors consider that a certain amount of force is necessarily reasonable when a police officer arrests a dangerous, fleeing suspect. *See Tennessee v. Garner*, 471 U.S. 1, 3, (1985).

Robinson alleges that Officers Cameron and Thompson violated her Fourth Amendment right to be free from the use of excessive force when they handcuffed her behind her back, slammed her on the ground, and tased her twice.

"'[An] officer must use force with measured and ascending actions that correspond to a suspect's escalating verbal and physical resistance.'" *Solis v. Serrett*, 31 F.4th 975, 983 (5th Cir. 2022) (quoting *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332–33 (5th Cir. 2020) (cleaned up)).  The use of force should be proportional to the threat.  *See Allen v. Hays*, 21-20337, 2023 WL 2580785, at *3. And the "focus is on the officers' reasonable perception of the events at issue, as they happened, without the aid of hindsight." *Id.* (quoting *Tucker v. City of Shreveport*, 998 F.3d 165, 176 (5th Cir. 2021)).

As noted above, Robinson admits that she refused to sign the citation and did not comply with the order to put her hands behind her back.  Robinson informed the officers she was unable to reach behind her back because of arthritis.  Robinson alleges that Officer Cameron attempted to force Robinson's arm behind her back, and then both officers "slammed" Robinson on the ground.  ECF No. 1 at 4.  Thompson applied pressure to Robinson's back with his knees while Cameron pressed Robinson's head to the ground to force her arms behind her back.  *Id.*  Thompson issued a warning, but "immediately" deployed his taser.  *Id.* at 5.  Robinson was

"struggling to breathe," and Thompson issued another warning and tased her again. *Id.*

Robinson's allegations are not conclusory and, if accepted as true, state a claim for relief that is plausible on its face. Defendants' argument that they were entitled to lawfully arrest Robinson is irrelevant to the excessive force claim she raises.

### E.    Defendants did not assert qualified immunity as to the use of force.

Defendants assert qualified immunity as a defense to their perceived false arrest claim. *See* ECF No. 6 at 2 ("Officers Cameron and Thompson are entitled to 'qualified immunity' (under both federal and state law) as LSA-R.S. 32:291 has not been successfully challenged regarding the taking of a motorist into custody for failing to sign a promise to appear on a citation, and because controlling case under Louisiana law . . . interprets same as allowing the Officer(s) to make a custodial arrest under the circumstances.").[1] However, as noted above, Robinson does not allege that the arrest itself was unauthorized. Rather, her § 1983 and state law claims against Officers Cameron and Thompson are based only on the amount of force used during the arrest. *See* ECF No. 1 at 6. Robinson raises and excessive force claim, and Defendants' Motion and corresponding memorandum do not mention or address excessive force.

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

---

[1] Defendants' memorandum references a "Section on 'qualified immunity'" that was apparently omitted from the memorandum. ECF No. 6-2 at 4.

would have known." *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

In the reply memorandum, Defendants argue that Robinson did not have a "clearly established right" to not be handcuffed behind her back. ECF No. 10 at 5. However, Robinson did have a clearly established right to be free from excessive force. *See Tarver v. City of Edna*, 410 F.3d 745, 753–54 (5th Cir. 2005). It was also clearly established that the amount of force that the officers could use "depend[ed] on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). Robinson's allegations, accepted as true, indicate there was no danger to the officers, and the nature of the offense was minor. ECF No. 9 at 9. Robinson did not attempt to flee or escape. *Id.*

Additionally, once a person is subdued and no longer resisting, the subsequent use of force is excessive. *See Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015). Based on the allegations, it is unclear when Robinson was "subdued."

Robinson states a plausible claim for relief. The Motion to Dismiss asserts qualified immunity as to the officers right to arrest Robinson—something that Robinson does not contest. The Motion and memorandum did not address Robinson's excessive force claim.

Furthermore, the Motion to Dismiss does not address whether Robinson was charged with or convicted of resisting arrest. If Robinson was convicted of that offense, her claims could be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

III.  **Conclusion**

Because the official capacity claims against Officers Cameron and Thompson are duplicative of those against the City of Pineville, IT IS RECOMMENDED that the Motion be GRANTED IN PART, and the official capacity claims be DISMISSED. Because Robinson states a plausible excessive force claim that was not addressed by Defendants' Motion, and it is unclear whether the federal claims are barred by *Heck*, IT IS RECOMMENDED that the Motion to Dismiss (ECF No. 6) be DENIED IN PART as to all other claims.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b).  A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause.  A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Friday, September 1, 2023.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE